In the Matter of Joseph JOHNSON,
Appellant,

v.

STATE of Missouri, Respondent.

No. SC 83738.

Supreme Court of Missouri,
En Banc.

Oct. 9, 2001.

Rehearing Denied Nov. 20, 2001.

Nancy A. McKerrow, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Asst. Atty. Gen., Jefferson City, for respondent.

## PER CURIAM.[1]

In 1991, Joseph Johnson entered guilty pleas to two counts of sodomy and was sentenced to five years' imprisonment on each count, to run concurrently. He received a conditional release in 1994. In 1995, he pleaded guilty to one count of sexual assault, was sentenced to four years' imprisonment, and was to be released on April 1, 1999. On March 30, 1999, pursuant to section 632.486,[2] the state filed a petition initiating proceedings to find that Johnson is a sexually violent predator.

To find that one is a sexually violent predator, the fact finder must determine: first, whether the person has pleaded guilty, been found guilty, or been found not guilty by reason of mental disease or defect of a sexually violent offense or has been committed as a criminal sexual psychopath; second, whether the person suffers from a mental abnormality; and third, whether that mental abnormality makes the person more likely than not to engage in predatory acts of sexual violence if not

1. The appeal in this case was originally decided by the Court of Appeals, Southern District, in an opinion by the Honorable James K. Prewitt. Following transfer to this Court, *Mo. Const. art. V, sec. 10,* portions of that opinion are incorporated without further attribution.

2. All statutory citations are to RSMo 2000.

confined in a secure facility. *See section 632.480(5)*. A jury verdict in such instance must be unanimous. *Section 632.495*.

At trial, the state presented Gerald Hoeflein, a department of corrections employee, as a witness. Hoeflein prepared the end-of-confinement report recommending commitment proceedings against Johnson. He has an undergraduate degree in architectural engineering from Lawrence Technology and a master's in counseling from the school of education at Boston University. He testified that a bachelor's degree in psychology and a master's in counseling would permit one to become a psychotherapist. He is not a licensed psychiatrist, psychologist, social worker, or counselor, but at the time of trial was working towards becoming a licensed counselor.

As a department of corrections employee, Hoeflein has facilitated group treatment for the Missouri sex offender program, assessed the risk of recidivism of individuals up for parole, and prepared end-of-confinement reports to determine whether individuals may qualify as sexually violent predators under the sexually violent predator law. At the time of trial, Hoeflein had prepared approximately 30 such reports.

Hoeflein's title at the department of corrections is "associate psychologist." He admitted that he works in that position under a state statute that gives the department until October 2001 to license its "entire psychological staff" and that he works "under a psychologist." Anytime he was asked how he was qualified to perform psychological testing or to work in the position he did, he responded, "By having had the experience and educational background required by the State of Missouri, Department of Corrections, for the position I'm in." Johnson's counsel objected several times to Hoeflein's qualifications to testify as an expert, but the court overruled the objections and permitted Hoeflein to testify.[3]

---

**3.** At a bench conference during which Johnson's counsel voiced his objection, the following exchange took place:

MR. R. WARDEN [Johnson's counsel]: Your Honor, have you decided he's an expert yet to give his opinion?

THE COURT: Yes, he is.

MR. R. WARDEN: Your Honor, this is the first time ... I've ever seen a man say I'm qualified because the Department of Corrections says I'm qualified. How can the Department of Corrections establish a basis for something like that? That's what he's doing.

THE COURT: Mr. Warden, you didn't ask the Department of Corrections if he was an expert. You asked Judge Perigo, and Judge Perigo said he was. Therefore, he's qualified in this court.

MR. R. WARDEN: I suppose so.

THE COURT: Just as a matter of curiosity, how many times do you have people in the Department of Corrections testify in these types of cases?

...

MR. R. WARDEN: I don't know Judge. I'd have to think about it.

THE COURT: Okay. This is the first time I ever had one try to be qualified. So it's also my first. But that doesn't mean he's not qualified. So I don't know what you meant by your comment.

MR. R. WARDEN: Well, here, Judge, normally to qualify somebody, he's got to be a member of some organization, or he has to hold some degrees.

THE COURT: He has a degree in counseling.

MR. R. WARDEN: Yes. That's all I've heard about.

THE COURT: Then he has five years of experience.

MR. R. WARDEN: All right. But the experience-

THE COURT: He's done 225 assessments. He's also been involved with over 225 MMPIs. He's testified in court over 20 times. He's had over 200 hours of training. So I find he's an expert.

MR. R. WARDEN: The comment I made was I've never heard somebody try to qualify as an expert because some other department says he's an expert.

Hoeflein interviewed Johnson for purposes of preparing his end-of-confinement report. Hoeflein gave his opinion, based on "a reasonable degree of professional certainty," that Johnson suffers from "antisocial personality disorder" and "paraphilia," which Hoeflein believed were "mental abnormalities" as defined by the statute, and that Johnson "is more likely to commit crimes of a violent predatory sexual nature." He never specifically testified that the "mental abnormalities" he diagnosed Johnson as having made it more likely than not that Johnson would commit predatory acts of sexual violence.

On cross-examination, Hoeflein admitted that he is not a "psychologist." He equivocated on whether or not he was required to be supervised. At one point he stated that he is required to be supervised, but not by a licensed psychologist, and that his "immediate supervisor" is not a licensed psychologist. Later in his testimony he stated that "associate psychologists" for the department of corrections do "psychological work . . . under the supervision of a person who is designated by the state as a 'psychologist' " and that his reports are signed as "approved by" a licensed psychologist. Hoeflein also stated the supervision is only required "[w]hile I'm under supervision for my license" but that he can do his work "without being supervised" as attaining his license "is a separate issue."

The jury returned a verdict finding that Johnson was a sexually violent predator. The court ordered that Johnson be committed to the custody of the director of the department of mental health for control, care and treatment in the sexually violent offender treatment and evaluation program.

Johnson appeals under section 632.495.

Johnson argues that the trial court erred when it permitted Gerald Hoeflein to offer opinions as to whether Johnson suffered from a mental abnormality that made it more likely than not that he would engage in predatory acts of sexual violence. He contends "Mr. Hoeflein was not qualified as an expert to render those opinions" since he was neither a psychologist nor a psychiatrist, and even if he were licensed as a professional counselor, he would not be permitted to make diagnoses of mental abnormalities.[4]

Although section 632.489.4 requires that a psychiatrist or psychologist "as defined in section 632.005" examine the alleged sexually violent predator before trial, no statute pertaining to sexually violent predators makes such limitations at trial. *See section 632.480, et seq.*

Section 490.065.1 provides:

In any civil action, if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

---

Later, when state's counsel indicated in a bench conference that she was prepared to begin asking Hoeflein for his opinions, Johnson's counsel objected:

MR. C. WARDEN: I'm going to make the same objection we made earlier. This man has testified that he has to be supervised by a licensed psychologist in order to do his job. If he has to be supervised by someone, how can he be an expert?

THE COURT: Well, the Court's opinion [is that it] goes to the weight the jury wants to give it. You know, some people believe that doing 250 subjects on a daily basis gives you more knowledge than being in an educational system and not seeing these people daily. So that's a question for the jury to decide.

4. In light of the disposition of this issue, the other points raised by Johnson are not addressed.

■ Generally, it is within the trial court's sound discretion to admit or exclude an expert's testimony. *State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991); *Landers v. Chrysler Corp.*, 963 S.W.2d 275, 281 (Mo.App.1997). As noted in *Landers*, "[t]he use of the disjunctive 'or' in section 490.065 recognizes that an expert witness may be qualified on foundations other than the expert's education or license." *Id.* Thus, in *Landers*, a neuropsychologist who taught neurology and neurological surgery at a medical school was permitted to testify as a medical expert as to the causation of an organic brain injury. *Id.* at 282. Subsequently, in *Fierstein v. DePaul Health Center*, 24 S.W.3d 220, 226–27 (Mo.App.2000), a licensed clinical social worker with a Ph.D. in social work was permitted to testify as an expert on the emotional distress a party suffered when a medical center released her medical records without her consent. The social worker gave his opinion based on a reasonable degree of "clinical certainty," not "medical certainty." *Id.* at 227.

Persons who are licensed medical doctors practicing psychiatry, licensed psychologists, and licensed social workers are permitted by law to evaluate persons and make diagnoses of mental disorders. The phrase, "the practice of medicine," is not legislatively defined, but has been construed by the courts to include the diagnosis and treatment of the sick. *See Missouri Bd. of Registration for the Healing Arts v. Levine*, 808 S.W.2d 440, 442 (Mo. App.1991). The "practice of psychology" is defined in section 337.015.3 and includes the "diagnosis and treatment of mental and emotional disorder or disability." "Clinical social work" is defined in section 337.600 to include "diagnosis, treatment, prevention and amelioration of mental and emotional conditions." "Professional counseling" and "practice of professional counseling," phrases defined in section 337.500,

are not defined to include "diagnoses" of any sort, but do include "[a]ppraisal or assessment, which means selecting, administering, scoring, or interpreting instruments designed to assess a person's ... aptitudes, intelligence, attitudes, abilities, achievement, interests, and personal characteristics."

■ In *Landers* and in *Fierstein*, the witnesses were both qualified within their respective professions to make the diagnoses to which they testified at trial. Hoeflein, an "associate psychologist" for the department of corrections, in the process of becoming a licensed professional counselor, was not so qualified to diagnose Johnson. The "diagnoses" Hoeflein was permitted to make while working at the department of corrections had to be approved and presumably reviewed by a supervising licensed psychologist; thus, Hoeflein should not have been permitted to testify to his "diagnoses" as "an expert" at trial. While his experience treating sex offenders conceivably would qualify him to testify as an expert on many issues, diagnoses of mental disorders is not even arguably within his area of expertise, and his testimony on that point should have been excluded.

Without Hoeflein's testimony, the state lacks sufficient evidence to support two of the three essential elements of its case—that Johnson suffers from a mental abnormality and that he suffers from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility.

Finding that the trial court abused its discretion in admitting Hoeflein's testimony and that the admission of the testimony was prejudicial, the judgment is reversed. The state, however, is entitled to rely on the trial court's erroneous ruling in deter-

mining what evidence to produce. *State v. Kinkead,* 983 S.W.2d 518, 519 (Mo. banc 1998). There may be other evidence that the state can present to make a submissible case. Therefore, the case is remanded.

All concur.